*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. L. WORKMAN, Minor.

UNPUBLISHED
May 18, 2023

No. 363393
Branch Circuit Court
Family Division
LC No. 21-006173-NA

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor child, KW, under MCL 712A.19b(3)(c) and (j). On appeal, respondent argues that the trial court clearly erred by finding that the statutory grounds for termination were established by clear and convincing evidence and by finding by a preponderance of the evidence that termination of respondent's parental rights was in KW's best interests. We affirm.

At birth, KW's meconium tested positive for amphetamines, methamphetamines, and tetrahydrocannabinol (THC). Respondent tested positive for the same drugs. After child protective proceedings were commenced, respondent and her boyfriend, KW's father,[1] regularly tested positive for amphetamines, methamphetamines, and THC. Drug use was the condition that led to adjudication through pleas of admission by both parents. To respondent's credit, she eventually overcame her drug dependency during the proceedings, consistently posting negative drug screens. Father, however, continued testing positive for methamphetamine use, and there was evidence that he was, unapologetically, a daily user of the drug. The trial court noted that father had methamphetamine-related convictions. With respect to respondent, the focus of the case became her insistence on continuing a relationship—in some form or fashion—with father, despite his failure to stop using methamphetamines.[2] There was evidence that respondent allowed

---

[1] He was also a respondent in the case, and his parental rights were similarly terminated. But his parental rights are not the subject of this appeal, which solely concerns respondent-mother's rights.

[2] After KW's birth and the initiation of proceedings, respondent again became pregnant by father. Respondent subsequently gave birth, but that child is not at issue in this case.

KW to be present around father during respondent's parenting time. Respondent repeatedly lied to petitioner's personnel, claiming that there was no contact between her and father.[3] Respondent eventually conceded that she met regularly with father, maintaining that he always acted appropriately and never used drugs around her or KW. Respondent purportedly wished to help father overcome his addiction to methamphetamines, but there was expert opinion evidence that respondent was very susceptible to relapsing relative to her own prior drug use and that she was easily manipulated. And respondent was repeatedly informed that it was critical that she stop all contact with father for both her own and KW's good. There was evidence that respondent simply did not believe that father posed a danger or a risk to KW.

On an initial petition for termination regarding both parents, the trial court terminated father's parental rights, finding, in part, that there was a reasonable likelihood that KW would be harmed if she were returned to father's care. Father did not show up for the termination hearing and had essentially discontinued participation in the proceedings. The trial court refused, however, to terminate respondent's parental rights at the time because, at that juncture, it was unclear to the court whether respondent was still in contact with father and whether respondent was being truthful when claiming that she had ended the relationship. But the trial court warned:

> The Court cannot say at this point in time that I'm clearly convinced that the statutory criteria has been established, but that's not to say that if we find out that mother does still have a relationship with [father] that the Department can't file another petition for termination, and that will probably answer the question about whether or not she's truly ended that relationship with [father].

Not long thereafter, upon obtaining clear evidence that respondent and KW were still having contact with father, petitioner filed a new petition to terminate respondent's parental rights, citing MCL 712A.19b(3)(c)(*i*) (condition leading to adjudication continues to exist), (c)(*ii*) (other conditions implicating the court's jurisdiction exist and have not been rectified), and (j) (reasonable likelihood child will be harmed if returned to parent).

At the conclusion of the termination hearing, the trial court found that it was "clear and convincing at this time that [respondent is] still in a relationship with [father]." The trial court ruled that MCL 712A.19b(3)(j) was established by clear and convincing evidence. The court reasoned that KW could be physically or emotionally harmed while in the presence of father in light of his continuing methamphetamine use. Indeed, the court noted that at the earlier termination hearing, it specifically found that father posed a risk of harm to KW. The trial court observed that respondent's conduct placed KW at risk of harm by father because respondent was facilitating continuing contact between KW and father by not ending the relationship. The trial court then turned its attention to MCL 712A.19b(3)(c), reciting the language in Subdivision (3)(c)(*i*). The trial court stated that the condition that existed at the time of the original petition was respondent's drug use, which no longer was an issue. The court then posited:

---

[3] There was also evidence that respondent had falsely claimed to have participated in Narcotics Anonymous.

But the *other condition* that existed was the fact that she was in a relationship with [father], and by virtue of the fact she's in a relationship with [father], who has had his rights terminated to four other children, is a daily methamphetamine user, does not have stable housing, puts this Court in a situation to believe that I'm clearly convinced that that's a condition that continues to exist. She's still in a relationship with him, albeit she's not using meth herself. But we've heard the testimony of the experts with regards to relapse and the potential for relapse. Yet she continues to place herself in that situation. [Emphasis added.]

Finally, the trial court addressed KW's best interests, concluding that termination of respondent's parental rights was in the child's best interests. After first noting that KW looked more to her foster parents for care than respondent, the trial court explained:

[I]t's clear to the Court that mother's prioritizing her relationship with [father] over that of her daughter, and that her daughter . . . needs permanence. She needs safety, she needs security, and she needs a safe . . . stable environment, and mother is not exhibiting what needs to be to provide that for her daughter.

Respondent appeals by right.

In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework with respect to appeals challenging the statutory grounds for termination and the best-interests determination:

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j) were implicated in this case, and they authorize termination under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent first argues that the trial court clearly erred by finding that there was clear and convincing evidence supporting termination under MCL 712A.19b(3)(j). Respondent acknowledges that there was contact between her and father at times, including when KW was present, but that there was no evidence that KW was emotionally or physically harmed. She contends that the contact with father did not and would not interfere with her care of KW and that she had not done anything to place KW at risk of harm.

We conclude that respondent's argument reflects a misinterpretation of MCL 712A.19b(3)(j). The fact that KW had thus far not been harmed misses the point, considering that MCL 712A.19b(3)(j) examines the question whether it is reasonably likely that a child "will be harmed" in the future if returned to his or her parent. The evidence of the father's instability and daily methamphetamine use and respondent's insistence that she and KW continue to have contact with father constituted adequate evidence demonstrating a reasonable likelihood that KW would be emotionally or physically harmed if she were returned to respondent's care. See *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021) ("The harm contemplated under MCL 712A.19b[3][j] includes emotional harm as well as physical harm."). This is especially true given the expert opinions that respondent was vulnerable to relapsing in regards to her past drug use and that she was easily manipulated. The fact that respondent was more than willing to lie about the contacts and relationship with father further supported the trial court's ruling. We thus hold that the trial court did not clearly err by finding that MCL 712A.19b(3)(j) was proven by clear and convincing evidence. This ground alone suffices to uphold the trial court's ruling in connection with the statutory grounds for termination. See *In re Mota*, 334 Mich App at 320. Nevertheless, we shall proceed to examine MCL 712A.19b(3)(c).

With respect to MCL 712A.19b(3)(c)(*i*), respondent argues that her plea of admission concerned testing positive to various drugs and had nothing to do with her relationship with father; therefore, the relationship was not a condition that led to the adjudication and MCL 712A.19b(3)(c)(*i*) was inapplicable. Petitioner agrees that the "relationship" was not part of the admission on the record at the time of adjudication. But petitioner maintains that the relationship still constituted a condition that led to adjudication because the "relationship and drug use were intertwined." We agree with respondent that MCL 712A.19b(3)(c)(*i*) did not apply because the condition that led to adjudication was solely respondent's drug use; the issue regarding respondent's relationship with father and the potential harm that it created developed later in the proceedings.

-4-

Respondent further argues that to the extent that the trial court was relying on MCL 712A.19b(3)(c)(*ii*), the evidence did not support its application because there was no evidence that KW was harmed during the limited contacts between KW and father and because the contacts between father and respondent did not necessarily mean that respondent would relapse and return to using drugs even if theoretically likely. We disagree. The language employed by the trial court plainly fit within the parameters of MCL 712A.19b(3)(c)(*ii*). The ongoing relationship qualified as an "[o]ther condition[]" that would have been adequate to trigger the court's jurisdiction. And respondent received recommendations to rectify that condition, which was not rectified after she was given a reasonable opportunity to do so. The evidence of long-term deception by respondent on the matter and her continuing actions to stay in contact with father demonstrated that there was no reasonable likelihood that the condition would be rectified within a reasonable time considering KW's age. We hold that there was no clear error in the determination that MCL 712A.19b(3)(c)(*ii*) was established by clear and convincing evidence.

With respect to the trial court's best-interests ruling, the sole argument made by respondent on appeal is that KW and respondent's newborn are currently in foster care together, that there is a possibility that respondent's parental rights to her newborn might not be terminated, that "the result would be separation of the siblings," and that it would be in the best interests of both children to keep KW's "case open pending the outcome of [the newborn's] case."

In *In re Mota*, 334 Mich App at 321, this Court discussed the best-interests analysis, stating as follows:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

We find that respondent's cursory argument is speculative and a bit convoluted. The reasons the trial court provided for determining that it was in KW's best interests to terminate respondent's parental rights, cited and quoted above, were legally sound and supported by the record. It is not in KW's best interest to delay her permanence and stability during the pendency of her siblings case. If respondent has another child, it would be contrary to KW's best interest to continue waiting for some uncertain event in the future. While it is DHHS's policy to keep siblings together, there is no policy reason to delay termination because a new sibling has been added to a pending child protective case. Accordingly, we hold that there was no clear error in regard to the court's best-interests ruling.

We affirm.


/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney